**EXHIBIT 1**

**No. US9434**

## COMMONWEALTH

**COMMONWEALTH INSURANCE COMPANY**

(hereinafter called the "Company")

PO Box 49115 Bentall Tower Three, 595 Burrard Street, Suite 1500, Vancouver, BC, Canada V7X 1G4

BROKER:   Marsh, Inc., New York, NY                    REPLACING NO.:  US8693

| LIMIT OF LIABILITY | | TOTAL PREMIUMS PAYABLE UNDER THIS POLICY | TERM | PERIOD OF INSURANCE |
|---|---|---|---|---|
| $    10,000,000. | Part of | | | **FROM:** 01 December 2011 |
| $  175,000,000. | Excess of | $      42,000. | 12 | **TO:**     01 December 2012 |
| $  125,000,000. | | | **MONTHS** | |

# NATIONAL RAILROAD PASSENGER CORPORATION
# AND AS MORE FULLY DESCRIBED HEREIN
(hereinafter called the "Insured")

MAILING ADDRESS:

60 Massachusetts Ave, NE
Washington, DC 20002

In consideration of the premium specified above (or specified in the form or endorsement(s) attached hereto) and of the conditions and other terms of this Policy and of the form or endorsement(s) attached hereto, the Company does insure the above Named Insured (hereafter called the "Insured") from inception date shown above to expiration date shown above, both dates at 12:01 A.M. Standard Time at the Location of the Insured Property, to an amount not exceeding the limit(s) of liability specified above (or specified in the form or endorsement(s) attached hereto).  To the extent that coverage in this Policy replaces coverage in other policies terminating Noon Standard Time at the inception date of this Policy, coverage under this Policy will not become effective until such other coverage has terminated.

## THE  CONDITIONS  ATTACHED  FORM  PART  OF  THIS  POLICY

This Policy is made and accepted subject to the foregoing provisions, and to such other provisions, stipulations, agreements or conditions as may be endorsed hereon or added hereto.  No term or condition of this Policy shall be deemed to be waived by the Company in whole or in part unless the waiver is clearly expressed in writing signed by the person(s) authorized for that purpose by the Company.  Neither the Company nor the Insured shall be deemed to have waived any term or condition of this Policy by any act relating to the appraisal of the amount of loss or to the delivery and completion of Proofs, or to the investigation or adjustment of any claim under the Policy.

IN WITNESS WHEREOF the Company through its representative(s) duly authorized by it for this purpose have executed and signed this Policy.

**COMMONWEALTH  INSURANCE  COMPANY**

USPOLJACSTAWESTEASTMAINDOCUMENT          Per ............................................................

THIS POLICY CONTAINS A CLAUSE WHICH MAY LIMIT THE AMOUNT PAYABLE.

COMMONWEALTH

**COMMONWEALTH INSURANCE COMPANY**

# THIS NOTICE IS ATTACHED TO AND MADE PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE ANY TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

Terrorism Premium (Certified Acts)  $6,500

**A.**  Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown above.

**B.**  Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.**  Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## Note:

☒  **As our quote for Terrorism coverage was NOT purchased, coverage will NOT include loss or damage caused by an 'Act of Terrorism" as defined under Section 102(1) of the Terrorism Act of 2002.**

☐  **As our quote for Terrorism coverage was purchased, coverage will include loss or damage caused by an 'Act of Terrorism" as defined under Section 102(1) of the Terrorism Act of 2002.**

INSURED NAME: National Railroad Passenger Corporation (Amtrak) POLICY NUMBER: US 9434

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(Cre. February 2008) 17047 – Policy



## COMMONWEALTH
### FORMS SCHEDULE

It is hereby understood and agreed that this Policy consists of the following forms and endorsements, as of its inception.

- Broker's Manuscript Wording
- Seepage and/or Pollution and/or Contamination Exclusion including Debris Removal and Cost of Clean Up Extension and Authorities Exclusion and Asbestos Material Removal Limitation
- Arbitration Clause Endorsement
- Service of Suit Endorsement
- Terrorism Exclusion Endorsement
- Commonwealth Conditions
- Receipt of Cancellation

**NATIONAL RAILROAD PASSENGER CORPORATION (Amtrak)**
AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED
COMPANIES AND/OR CORPORATIONS AND THE INSURED'S INTEREST IN
PARTNERSHIPS AND JOINT VENTURES
AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED
AND ANY PARTY IN INTEREST WHICH THE
INSURED IS RESPONSIBLE TO INSURE

HEREINAFTER REFERRED TO AS "THE INSURED"

1.   **TERM OF INSURANCE**

In consideration of $42,000 (being 5.7143% part of $735,000) annual premium, this policy attaches and covers for a period of one year, from December 1, 2011 to December 1, 2012 beginning and ending at 12:01A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this policy.

2.   **PARTICIPATION**

This policy covers for $10,000,000 part of $175,000,000 or 5.7143 percent interest in this insurance and this Company shall not be liable for more than its designated percent of the limits of liability set forth herein.

3.   **LIMITS OF LIABILITY**

This Company shall not be liable for more than its proportion of $175,000,000 in any one occurrence

4.   **EXCESS CLAUSE**

A.   Coverage hereunder shall not apply until the amount of loss, damage or expense arising out of any one occurrence exceeds $125,000,000 plus the applicable portion of the primary policy deductibles.

The amount of the applicable portion of the primary policy deductible referred to above shall be determined by the proportion that the amount of loss attributable to the perils and/or property and/or coverages insured against under this policy (without application of the excess provision) bears to the total amount of loss multiplied by the amount of the applicable primary deductibles.

In the event that the total amount of loss, damage, or expense attributable

1

to the perils and/or property and/or coverage insured under the underlying insurance exceeds that amount at which this policy would normally attach, but due to the application of sublimits in the underlying policy(ies), the total loss, damage and expense payable by the underlying policy(ies) does not fully exhaust the underlying policy(ies) limit, then this policy shall drop down and be liable for the loss as covered under this policy in excess of the amount paid by the underlying policy(ies).

As respects theft, the term Occurrence as referred to elsewhere within the policy means the sum total of all losses of covered property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this policy.

B.    In determining the amount of any loss, damage, or expense for which this policy is excess, the total loss for all coverages caused by any combination of perils, one or more of which is insured against under the primary policy, shall be used even though all such perils or coverages are not insured against under this excess policy.

(1) Any recoveries made under the primary policy shall be considered as first applying to those perils and/or property and/or coverages not insured against by this policy. Upon exhaustion of the primary policy limits, this policy shall drop down and be liable for the loss in excess of the amount attributable to the primary policy as respects those perils and/or coverages and/or property insured hereunder subject to the limit of this policy.

(2) If there is any other excess insurance covering the perils and/or property and/or coverages insured against in the primary policy, but not covered by this policy, this insurance shall then allocate any loss recoveries made under the primary policy in the same proportion as the amount of loss involving the property and/or coverages insured against by this policy bears to the combined total loss. Upon exhaustion of the primary policy limits, this policy shall drop down and be liable for the loss in excess of the amount attributed to the primary policy as respects those perils and/or property and/or coverages covered hereunder subject to the limit of this policy.

(3) Paragraph two shall not apply, however, when the amount of loss attributed to the perils insured under the primary policy, but not covered under this policy, exceed the total amount of insurance provided by the primary and excess coverages with respect to said perils. In this situation any recoveries made under the primary policy shall first apply to those perils not insured against by this policy. Upon exhaustion of the primary policy limits, this policy shall drop

down and be liable for the loss in excess of the amount attributed to the primary policy as respects those perils covered hereunder subject to the limit of this policy.

C.    In the event the annual aggregate limits provided for flood and/or earthquake in any underlying insurance are diminished or exhausted in any one policy year, the coverage provided under this policy shall respond as excess of the remaining limits.

In such event, the applicable amount of the deductible provision of the primary policy shall apply to the combination of all policies.

D.    Program Limits of Insurance

(1)    With respect to the perils of flood and earthquake, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of $125,000,000, which shall apply separately to each peril as referred to in Section 13.  With respect to earthquake in the State of California, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of $50,000,000.  Even if the peril of flood or earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause B;

(2)    $125,000,000  per occurrence Property in Transit including derailment (including collision, upset and overturn)

(3)    $125,000,000  per occurrence Time Element

(4)    $125,000,000  per occurrence as respects Newly Acquired Real and Personal Property to be reported within 180 days

(5)    $125,000,000  per occurrence Accounts Receivable

(6)    $125,000,000  per occurrence Debris Removal

(7)    $125,000,000  per occurrence Demolition and Increased Cost of Construction

(8)    $125,000,000  per occurrence Unintentional Errors & Omissions

(9)    $125,000,000  per occurrence Royalties

(10)    $ 50,000,000  per occurrence Penalties Under Contract

(11)   $ 50,000,000 per occurrence Loss Adjustment Expenses

(12)   $ 50,000,000  per occurrence Property in the Course of Construction at new locations not on the schedule of locations on file with Company

(13)   $ 50,000,000  per occurrence Valuable Papers and Records

(14)   $ 50,000,000 per occurrence Miscellaneous Unnamed Locations (PD and TE)

(15)   $ 20,000,000 per occurrence for auto rental reimbursement (Auto Train) per paragraph 7.A.(8)

E.   Underlying Deductibles

All losses, damages or expenses arising out of any one occurrence shall be adjusted as one loss, and from the amount of such adjusted loss shall be deducted $10,000,000 except:

(1)   5% of the actual value per unit of insurance at the time when such loss occurs at locations within the State of California for the peril of Earthquake subject to a minimum of $10,000,000 per occurrence. This deductible shall apply only to those units of insurance suffering a loss in the occurrence for which a claim is made.  However, this deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

(2)   In the event of a joint loss involving both the property carrier(s) and breakdown carrier(s), the single largest deductible applying under each policy to the loss for which claim is submitted will be shared proportionally by each carrier based on the value of the loss.

The following shall be considered a separate unit of insurance:  (a) each separate building or structure; (b) the contents of each separate building or structure; (c) property in each yard; (d)  business interruption as defined in Clause  7.B. for the twelve month period immediately following the loss.

If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible. The definition of units of insurance shall not be construed as limiting the deductible to a single such item but are solely for the purpose of calculating the total deductible applicable to loss occurrence.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the Insured shall have the right to

4

separate the loss amount by peril for the purposes of application of the deductible(s) specified in this section, notwithstanding the above reference to two or more deductibles and the policy limits.

As respects theft, the term Occurrence as referred to elsewhere within the policy means the sum total of all losses of covered property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this policy.

The deductible amounts specified above shall not apply to general average contributions, salvage charges and sue and labor expenses.

5.    **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to National Railroad Passenger Corporation.

6.    **TERRITORY**

This policy covers loss occurring anywhere within the 50 states comprising the United States of America, the District of Columbia, and Canada.  Coverage will apply in Mexico only in the event of a required detour.

7.    **COVERAGE**

Except as hereinafter excluded, this policy covers:

A.    **Real and Personal Property**

(1)    The interest of the Insured in all real and personal property including but not limited to bridges, tunnels, trestles, right of way, catenary, track and roadbed, rolling stock, locomotives, electrical transmission systems (including central instrument hut, transformers, frequency converters, substations/ switch stations), maintenance of way equipment and other property owned, used, leased or intended for use by the Insured, or hereafter constructed, under repair, erected, installed, or acquired, including while in course of construction, erection, repair, installation, and assembly.  In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2)    The interest of the Insured in earned and advanced freight charges for freight, merchandise, baggage or similar property.

(3)    The interest of the Insured in real and personal property of others in the Insured's care, custody, or control, of the type outlined in paragraph (1) above, including the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property, including property handled under rules of interchange, operating and trackage agreements, or as common carriers, contract carriers, warehousemen, or bailee (including but not limited to locomotives, rolling stock, foreign rolling stock, bill of lading, and private passenger vehicles carried on the Auto Train).

Permission is granted the Insured to transport any and all kinds of merchandise or other property in the usual and necessary course of their business and to change the number or naming of property insured hereunder, provided that a record be kept that will prove the identification of same in case of loss, anything contained in the printed conditions of this policy to the contrary notwithstanding.

(4)    Real and personal property, of the type outlined in paragraph (1) above, which the Insured is responsible for or has agreed to insure. Coverage shall apply to commuter rail operations and equipment where the Insured has management control, operations control and/or responsibility for providing insurance, but only as respects the Insured's interest in said commuter rail operations and equipment.

(5)    At the option of the Insured, personal property of the Insured's officials, employees and representatives while on the premises of the Insured.  This insurance shall then act as primary insurance.

(6)    Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

(7)    The expense of debris removal, rerail, salvage, defense and rerouting of passengers and cargo by whatever means because of property damage by an insured peril;

(8)    The cost to reimburse passengers for rental vehicles when their private passenger vehicle traveling on the Auto Train has been damaged by an insured peril.

**B.**    **Business Interruption**

(1)    Loss resulting from necessary interruption of business conducted by the Insured (including research and development), whether total or partial, and caused by loss, damage, or destruction covered herein

during the term of this policy to real and personal property as described in Clause 7.A.

(2)     If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and all charges and expenses only to the extent that these must necessarily continue during the interruption of business, including Ordinary Payroll, and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3)     In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A, which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including Ordinary Payroll, directly attributable to such research and development activities.

(4)     However, this Company shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock.  Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5)     Resumption of Operations:  If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:

(a)     by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b)     by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6)     Experience of the Business:

(a)   In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7.A.

(b)   With respect to alterations, additions, and property while in the course of construction, erection, repair, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, repair, installation, or assembly.

## C.   **Extra Expense**

(1)   Extra Expense (including detour and rerouting of cargo and passengers by whatever) incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2)   "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

## D.   **Rental Value**

(1)   Rental Value loss sustained by the Insured resulting directly from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause  7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2)   "Rental Value" is defined as the sum of:

(a)   the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b)   the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c)   the fair rental value of any portion of said property which is occupied by the Insured.

(3)   Experience of the Business:

    (a)   In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 7.A.

    (b)   With respect to alterations, additions, and property while in the course of construction, erection, repair, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, repair, installation, or assembly.

**E.**    **Royalties**

(1)   Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2)   If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3)   Resumption of Operations:  The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by this Company.

(4)   Experience of the Business:  In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.

**F.**    **Time Element Extensions**

(1)    This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

    (a)    Service Interruption: electrical, steam, gas, water, sewer, telephone, data, video, communications or any other utility or service, transmission lines and related plants, substations and equipment situated on or outside of the premises;

    (b)    Contingent Time Element: property that wholly or partially prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the world;

    (c)    Impounded Water: dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

    (d)    Leader Property: property not owned or operated by the Insured, located in the same vicinity as the Insured, which attracts business to the Insured.

(2)    Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained during a period of time, not to exceed 30 consecutive days, when access to real or personal property is impaired by order or action of civil or military authority issued in connection with or following a peril insured against.

(3)    Ingress/Egress: This policy is extended to cover the loss sustained during the period of time not to exceed 30 consecutive days, when, in connection with or following a peril insured against, ingress to or egress from real or personal property is impaired.

**G.**    **Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1)    Period of Recovery: The length of time for which loss may be claimed:

(a)    shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

(b)    and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    (i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

    (ii)    the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for more than 180 days from said later commencement date;

(c)    with respect to alterations, additions and property while in the course of construction, erection, repair, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

(d)    shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2)    Special Exclusions:  This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the reoccupancy of the premises.

(3)    Expense to Reduce Loss:  This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

**H.**    **Transit**

(1)    Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of

loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2)   This insurance is extended to cover loss or damage to property:

 (a)   sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

 (b)   arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

 (c)   occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

 (d)   at the Insured's option, which is incoming to the Insured.

(3)   (a)   The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor, except as provided under Section 7.A.(3).

 (b)   With respect to shipments made under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured (if in writing prior to loss).

(4)   The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5)   Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

The Insured's right of recovery under this policy for damage to those shipments moving under released value bills of lading shall not be prejudiced by the surrender of the damaged property to the insurers.

**I.**   **Accounts Receivable**

(1)    All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2)    Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3)    Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4)    Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)    The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)    The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

**J.**    **Leasehold Interest**

(1)    Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

(a)   the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

(b)   improvements and betterments to real property which are not covered under any other section of this policy;

(c)   the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2)   (a)   "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

(b)   "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)   Definitions:

The following terms, wherever used in this section shall mean::

(a)   "The Interest of the Insured as Lessee" is defined as:

(i)   the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

(ii)   the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

(b) "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

(c) "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(4) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

## 8. <u>COVERAGE EXTENSIONS</u>

### A. <u>Demolition and Increased Cost of Construction</u>

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for:

(1) the cost of demolishing the undamaged property including the cost of clearing the site;

(2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

(4) any increase in the Time Element loss arising out of the additional time required to comply with said law or ordinance.

### B. <u>Debris Removal</u>

This policy covers the following expenses resulting from a covered loss:

(1)    the cost of removal of debris of property covered hereunder;

(2)    the cost of removal of debris of property not covered hereunder from the premises of the Insured;

## C.    **Expediting Expense**

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

## D.    **Loss Adjustment Expenses**

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy.  However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

## E.    **Fire Brigade Charges and Extinguishing Expenses**

This policy covers the following expenses resulting from a covered loss:

(1)    fire brigade charges and any extinguishing expenses which the Insured incurs;

(2)    loss and disposal of fire extinguishing materials expended.

## F.    **Defense Costs**

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

## G.    **Consequential Loss**

(1)    In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which causes physical

damage to insured property, then there shall be liability under the policy for the resulting loss.

(2)   This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded. It is agreed that exclusions F., G., and H. contained in Section 10, "Perils Excluded" shall not apply to this extension when such loss or damage occurs at a location which is not owned or operated by the Insured.

(3)   This policy also insures the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a cause of loss not otherwise excluded.

**H.**   **Control of Damaged Merchandise**

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.

**I.**   **Brands or Trademarks**

In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

**9.**   **PERILS INSURED AGAINST**

This policy insures against all risk of direct physical loss of or damage to property described herein including general average, salvage and all other charges on shipments covered hereunder, except as hereinafter excluded.

Physical loss or damage shall include any destruction, disruption, distortion or corruption of any computer data, coding, program or software except as hereinafter excluded.

10.   **PERILS EXCLUDED**

This policy does not insure:

A.   against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

    (1)   cause the Insured to sustain such loss, and

    (2)   obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.   against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

C.   against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D.   against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E.   against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F.   against electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

G.   against mechanical breakdown unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

H.   against explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, or steam engines owned or operated by the Insured unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage; it is agreed that direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases or combustion therefrom shall be covered hereunder;

I.   against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; except:

   (1)   if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

   (2)   this Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted at an insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining a nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

J.   (1)   against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

      (a)   by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

      (b)   or by military, naval, or air forces;

      (c)   or by an agent of any such government, power, authority, or forces;

   (2)   against any weapon employing atomic fission or fusion;

(3)    against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5)    against risks of contraband or illegal trade.

K.    Earthquake in Alaska, Hawaii, and Puerto Rico.   This exclusion does not apply to resulting loss caused by fire, explosion or sprinkler leakage.

Exclusions B, C, E, F, G and H do not apply to property in transit.

Exclusions C, F, G and H do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusions F, G, and H do not apply to electronic data processing systems, valuable papers and records, accounts receivable and related time element expenses.

Exclusions F, G, and H do not apply to locomotives, rolling stock or other conveyance insured herein.

11.    **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.    Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements.  Land improvements are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams, and additions to land such as pavements, roadways, or similar works.  This exclusion does not apply as respects Track and Roadbed (defined as rails, ties, fastening, drainage, improved land, culverts and ballast in place; interlockers, retarders and switches).

B.    Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C.    Money and securities;

D.    Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber, and animals except for research;

E.    Watercraft, aircraft, and motor vehicles licensed for highway all except while on the Insured's premises, while as contents of buildings, while on premises owned or leased by the Insured, while on premises utilized by the Insured as TOFC/COFC terminals, as lading, or when in use as hi-rail vehicles, but this exclusion shall not apply to contractor's equipment;

F.    Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G.    Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

12.    **VALUATION**

In case of loss, the basis of adjustment shall be as follows:

**A.   Stock**

(1)    Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2)    Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and unincurred expenses to which the sales price would have been subject.

(3)    Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts, rebates, and unincurred expenses to which such sales price would have been subject.

**B.   Real and Personal Property**

(1)    Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2)  Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

(3)  Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information;

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, papertapes, cards, electronic memory circuits, and magnetic or optical storage devices.  "Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means.  It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4)  Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5)  Fine Arts shall be valued at the appraised value; or, if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.  Fine Arts valued in excess of $10,000,000 per item must be declared and appraised.

(6)  Rolling Stock:

(A)  *Owned Rolling Stock*:  Loss or damage to owned rolling stock, including locomotives, shall be adjusted at the repair or

replacement cost as of the date of replacement, if actually repaired or replaced. If the above mentioned rolling stock is not repaired or replaced, the loss shall be adjusted at the actual cash value.

With respect to this paragraph (6), replacement cost shall mean the Insured's cost of new units of like kind and quality as of the date of replacement, without deduction for physical depreciation or deterioration. If units of like kind and quality are neither in production nor available for purchase as new equipment, the loss settlement(s) shall be based on the cost of a new unit in current manufacture equal to or the next higher capacity to the unit involved.

With respect to this paragraph (6), actual cash value of rolling stock and locomotives shall mean the replacement cost as defined above, depreciated by straight line depreciation of 2.5% per year subject to a maximum depreciation of 50%; except as respects Maintenance of Way equipment, which will be depreciated by straight line depreciation of 8.5% per year subject to a maximum depreciation of 80%. Actual cash value shall in no event exceed what it would then cost to repair or replace the lost or damaged property with material of like kind and quality.

The above notwithstanding, when values and expenses cannot be reasonably determined, all questions affecting values, depreciation, repairs, salvage and dismantling costs shall be settled in accordance with the factors published by the Association of American Railroads in effect at the time of loss, or factors later put into effect retroactive to the time of loss.

Loss or damage to units will be considered as total when the cost of repair and/or replacement exceeds 80% of the replacement cost of that unit.

The basis of loss settlement for Leased or Rented Rolling Stock shall be the same as that for Owned Rolling Stock except not to exceed the Insured's liability therefor.

(B)   *Foreign Rolling Stock*: All questions affecting values, depreciation, repairs, salvage and dismantling costs in connection with losses to foreign rolling stock shall be settled whenever applicable in accordance with the rules of the Association of American Railroads in effect at the time of loss; or rules later put into effect retroactive to the time of loss.

Additionally, Actual Cash Value of any equipment attached to or used solely in connection with a rail car, which value cannot be determined under Association of American Railroad Rules, shall be added to the value of the car.

(7)   Other property not otherwise provided for, at replacement cost new as of the date of replacement.

It is agreed by the Insured and Company that in the event of loss or damage by perils insured hereunder to properties designated as "Retired in Place", the limit of loss shall be the cost of debris removal, less any salvage value.

(8)   Permission is granted for the Insured to replace the damaged property with any property at the same site or at another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site.  If property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

The above paragraphs 12(A) and (B)(1) through (8) notwithstanding, permission is granted to increase the amount of loss by no more than an additional 25% to the extent that such additional loss is an obligation of the Insured under an applicable lease or contract.

13.   **EARTHQUAKE AND FLOOD**

A.   Each loss by earthquake or flood shall constitute a single loss hereunder if:

(1)   more than one earthquake shock occurs within any period of 168 (one hundred and sixty eight) hours during the term of this policy, the beginning of which 168 hour period may be determined by the Insured; or

(2)   any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) or other bodies of water and the subsidence of same within their normal confines; or

(3)   any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

Earthquake is defined as a shaking or trembling of the earth that is tectonic in origin.

Flood is defined as a rising and overflowing of a body of water onto normally dry land.

B.    Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C.    This Company shall not be liable, however, for any loss caused by any earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

## 14.    CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

## 15.    EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 16.    UNDERLYING INSURANCE

A.    Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B.    If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

## 17.    OTHER INSURANCE

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly

covering the same property against the same causes of loss.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance.  Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Company guarantees prompt payment in full of the amount of loss which would have been otherwise recoverable hereunder in the absence of such other collectible insurance and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other collectible insurance minus the cost of recovery.  As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

18.   **SUBROGATION**

A.   Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The Insured may waive subrogation against other railroads under Side Track and other Operating Agreements.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant, vendor, supplier or customer of the Insured, is waived.

B.   In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore.  The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Company to secure such right.  The Company will act in concert with all other interests concerned, i.e., the Insured and any other Company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

19.   **SALVAGE AND RECOVERIES**

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly.  If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies)

participating in the payment of any loss, in the proportion of their respective interests.

20.   **MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

21.   **ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

22.   **NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Home Office Insurance Department, the Insured shall report such loss or damage to Marsh USA Inc., 1255 23rd Street NW, Suite 400, Washington DC  20037, for transmission to this Company.  Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

23.   **PROOF OF LOSS**

The Insured, at the request of the Company, will render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

24.   **PARTIAL/INTERIM PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company.

It is agreed that in the event of loss or damage under this policy to insured property wherein it is determined that repair or replacement will exceed 60 days to complete, the Company(ies) on request and upon receipt of an Interim Proof

Of Loss, hereby agree to make interim payments to the extent of any reasonable expenses paid by the Insured in repairing or replacing damaged or lost property. It is understood and agreed that the Company(ies) shall have no obligation to make payment until the extent of any applicable deductible(s) has first been exhausted by the Insured.

## 25.   ASSIGNED ADJUSTER

It is agreed that at the Insured's option, the Company will use Ratcliff Property Adjusting for the adjustment of all claims made against this policy. This assignment may be changed by mutual consent of the Insured and the Company.

## 26.   APPRAISAL

If the Insured and this Company fail to agree on the amount of the loss, each, upon written demand of either the Insured or this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire. However, if the award is greater than the amount offered by the Company in payment of the loss at any time before the award is rendered, then the Company shall pay 100% of the fees and expenses for each appraiser and the umpire and for the appraisal.

## 27.   PAIR AND SET

Except as provided under the Machinery clause and paragraph (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.   the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.   the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

28. **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall reasonably cooperate with this Company, and, at this Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

29. **SUE AND LABOR**

In case of actual or imminent loss or damage covered by this policy, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall pay the expenses so incurred.

30. **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

31. **REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

32. **SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with Clause 22 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid

or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time. Prosecution of a suit by the Insured shall not be barred due to the failure of the Company to timely advise and notify the Insured of the expiration of any applicable dates to file and commence said suit.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

## 33. **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company hereby authorizes Marsh USA Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

## 34. **CANCELLATION**

A.   This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at 60 Massachusetts Avenue, NE, Washington, DC 20002 and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective. The earned premium shall be computed on a pro-rata basis.

B.   The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C.   Cancellation shall not affect coverage on any shipment in transit on the date of cancellation.  Coverage will continue in full force until such property is safely delivered and accepted at place of final destination, but not beyond 15 days after the expiration of this policy.

D.   In the event of non-payment of premium this policy may be canceled by the Company by mailing to the Insured at the address shown in A. above stating when, not less than 15 days thereafter, such cancellation shall be effective.  Reinstatement of coverage shall be effective immediately upon receipt of premium by the Company.

35.   **JOINT LOSS AGREEMENT**

With respect to insurance provided by this policy, it is agreed that:

A.   If at the time of loss, there is in existence a policy(ies) issued by a boiler and machinery insurance company which may cover the same property or cover the location at which the property subject to loss is situated; and

B.   if there is a disagreement between the companies under this policy and such other contract either as to:

(1)   whether such damage or destruction is insured against by this policy or by an accident insured against by such boiler and machinery insurance policy; or

(2)   the extent of participation of this policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, by any one or all of said policies;

this Company shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than this Company would have paid if there had been no boiler and machinery insurance policy in effect, subject to the following conditions:

(1)   the amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the companies is limited to the minimum amount remaining payable under either the boiler and machinery or this policy(ies);

(2)   the boiler and machinery insurance company shall simultaneously pay to the Insured at least one half of said amount which is in disagreement;

(3)    the payments by the companies hereunder and acceptance of the same by the Insured signify the agreement of the companies to submit to and proceed with arbitration within ninety days of such payments;

The arbitrators shall be three in number, one of whom shall be appointed by the boiler and machinery insurance company, one of whom shall be appointed by this Company, and the third of whom shall be appointed by consent of the other two; the decision by the arbitrators shall be binding on the companies and that judgment upon such award may be entered in any court of competent jurisdiction;

(4)    the Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

(5)    the provisions shall not apply unless such other policy issued by the boiler and machinery insurance company is similarly endorsed;

(6)    acceptance by the Insured of sums paid pursuant to the provisions, including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the companies.

## 36.   **VALUES**

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 37.   **TITLES OF PARAGRAPHS**

The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 38.   **POLICY AUTHORS**

Regardless of who may have drafted or prepared this policy, or any portions thereof, the provisions contained herein shall be deemed to have been authored by this Company.

## 39.   **CONFORMANCE**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such

statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

40.   **FULL WAIVER**

The terms and conditions of this form and endorsements attached thereto replace those of the policy to which it is attached, all terms, conditions and endorsements of the latter being waived.

**Attached to and forming part of Commonwealth Insurance Company Policy No and Endorsement Nos. 1 through 12 as issued at inception.**

_____     _____

**Authorized Signature**                                    **Date**

## ENDORSEMENT NO. 1

**INSURED:   National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:        December 1, 2011**

The following provisions are hereby attached to and made part of this Policy:

I.    Notwithstanding anything to the contrary contained herein, it is understood and agreed as respects loss or damage to property owned, leased by and/or under the care, custody or control of the Insured (including but not limited to the roadbed and right of way) resulting from the emission, discharge, dispersal, disposal, seepage, release or escape of any liquid, solid, gaseous or thermal irritant, contaminant or pollutant arising out of or in the course of the Insured's operations, coverage shall be limited to the perils of:   Fire, Lightning, Explosion, Flood, Earthquake, Collision, Upset, Overturn and/or Derailment

II.     Coverage provided by this endorsement shall not apply to:

1.    Loss of, damage to or loss of use of property directly or indirectly resulting from sub-surface operations of the Insured, and/or removal of, loss of, or damage to sub-surface oil, gas or any other substances;

2.    Fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

3.    Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances;

4.    The cost of air or land monitoring of polluting and/or contaminating substances;

5.    The cost of removing and/or nullifying and/or cleaning up seeping and/or polluting and/or contaminating substances o third party property (non-owned nor leased by the Insured nor under the control of the Insured).

Nothing contained in the foregoing shall be construed to increase underwriters' limit of liability I respect of any one occurrence beyond the amount set forth in the declaration page of this policy.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

ENDORSEMENT NO. 2

**INSURED:**          **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**        **December 1, 2011**

### PROPERTY MILLENNIUM ENDORSEMENT

It is noted and agreed this policy is hereby amended as follows:

A.   The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1.   correctly recognize any date as its true calendar date;

2.   capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

3.   capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B.   It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system of its related equipment, to correct deficiencies or features of logic or operation.

C.   It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured on for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze of weight of snow. In consequence of all the foregoing the Annual Premium remains unaltered.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 3

**INSURED**:          **National Railroad Passenger Corporation**

**EFFECTIVE**:        **December 1, 2011**

### PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1.  Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,
2.  Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,
3.  Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril.  Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, or Windstorm.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 4

**INSURED:**      **National Railroad Passenger Corporation**

**EFFECTIVE:**      **December 1, 2011**

### MOLD / FUNGUS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

      (a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

      (b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

      (c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 5

**INSURED:**        **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**        **December 1, 2011**

**Endorsement is skipped in sequence**

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 6

**INSURED:**        **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**       **December 1, 2011**

### WEH Asbestos Endorsements (1994)

a.   This policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Named Perils:

Fire, explosion, lightning, windstorm; hail; direct impact of vehicle, aircraft or vessel; Riot or civil commotion; Vandalism or malicious mischief; or accidental discharge of fire protective equipment, earthquake and flood.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1.      The said building or structure must be insured under this policy for damage by that Named Peril

2.      The Named Peril must be the immediate, sole cause of the damage to the asbestos.

3.      The Insured must report to Underwriters the existence and cost of the damage as soon as practicable after the Named Peril first damaged the asbestos. However, this policy does not insure any such damage first reported to Underwriters more than 12 (twelve) months after the expiration, or termination, of the policy period.

4.      Insurance under this policy in respect of asbestos shall not include any sum related to:

(i)      any faults in the design, manufacture or installation of the asbestos
(ii)     asbestos not physically damaged by the Named Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

b.   Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum relating thereto.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 7

**INSURED:**      **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**      **December 1, 2011**

### Biological or Chemical Materials Exclusion

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

**ENDORSEMENT NO. 8**

**INSURED:**          **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**        **December 1, 2011**

1. **Electronic Data Exclusion**
   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

   (a) This policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss o use, reduction in functionality, cost expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and eletromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

   COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature.  COMPUTER VIRUS includes but is not limited to 'Trojan Horses', "worms' and 'time or logic bombs'.

   (b) However, in the event that a peril listed below results from any of the matters described in paragraph *a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such peril:    Listed Perils:       Fire, Explosion

2. **Electronic Data Processing Media Valuation**
   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

   Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored.  Such cost of reproduction shall include all reasonable and necessary amounts, not to **exceed $50,000,000** any one loss, incurred by the Insured in recreating, gathering and assembling such ELECTRONIC DATA.  If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Insured or any other party, even if such ELECTRONIC DATA cannot be recreated. Gathered or assembled.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 9

**INSURED:**        **National Railroad Passenger Corporation**

**EFFECTIVE:**      **December 1, 2011**

In consideration of the premium charged at inception, it is hereby understood and agreed the following DEFINITION is added:

OCCURRENCE:

Any insured loss or several insured losses arising directly from one common cause, event or catastrophe and during the period of this insurance.  If such loss or several losses are attributable to several causes in an unbroken chain of causation, the cause which triggered the chain of causation is understood to be the common cause, event or catastrophe.  All such loss or losses shall be added up and the result shall be treated as one occurrence irrespective of the period of time or area within which such losses occur. In case of uncertainty over scientific issues, the parties agree to seek expert advice from a neutral and recognized organization.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 10

**INSURED:**          **National Railroad Passenger Corporation (Amtrak)**

**EFFECTIVE:**          **December 1, 2011**

In consideration of the premium charged at inception, it is hereby understood and agreed:

### CANCELLATION CLAUSE AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby agreed that **Clause 34. CANCELLATION** of this policy is amended to include the following condition:

> In the event that during the policy period a financial strength rating lower than A- is issued by A. M. Best Co., for the Company, this policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. Furthermore, if such notice is provided to the Company within 30 days of the issuance of such financial strength rating, the Company shall calculate the return premium on a pro-rata basis without the application of a minimum earned premium provision or short rate penalty.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 11

**INSURED:**     **National Railroad Passenger Corporation**

**EFFECTIVE:**     **December 1, 2011**

### GREEN COVERAGE ENDORSEMENT

In consideration of the premium charged at inception, and subject to the terms, conditions, exclusions and limitations of the policy, as provided in the Valuation Clause when insured property is repaired or replaced as a direct result of insured physical loss or damage, the policy is extended to cover the following reasonable and necessary additional costs incurred by the Insured:

- To repair or replace such damaged insured property with material of like kind and quality that qualifies as Green.

- To replace the insured physically damaged portions of insured roofing systems with vegetative roof(s) that qualify as Green including the addition of trees, shrubs, plans and lawns to those roofs.

- To flush out the air in the area of such damaged insured property with 100% outside air and to provide replacement filtration media for the building's ventilation system that controls such damaged area all when part of a Green reconstruction.

- To pay an accredited professional certified by a Green Authority to participate in the design and construction for repairing or rebuilding such damaged insured property that qualifies as Green.

- For the process of certifying or recertifying that the repaired or replaced damaged insured property qualifies as Green.

- In the removal, disposal or recycling of such damaged insured property in a manner that qualifies as Green.

The Company's liability in a single occurrence under this Endorsement shall not exceed the lesser of 15% of the amount of property damage loss or $1,000,000.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

## ENDORSEMENT NO. 12

**INSURED:**          **National Railroad Passenger Corporation**

**EFFECTIVE:**          **December 1, 2011**

### TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**All other terms and conditions of the policy to which this endorsement is attached remain unchanged.**

<u>ENDORSEMENT</u>     No. 13

IT IS HEREBY UNDERSTOOD AND AGREED that:-

1.  The Commonwealth Seepage and/or Pollution and/or Contamination Exclusion; Debris Removal and Cost of Clean Up Extension; Authorities Exclusion; Asbestos Material Removal Limitation Endorsement is hereby DELETED from the Policy

2.  The Commonwealth Arbitration Clause Endorsement is hereby DELETED from the Policy.

3.  The Commonwealth Certified Acts of Terrorism Exclusion Endorsement is hereby DELETED from the Policy.

4.  The Commonwealth Conditions section of the Policy is hereby DELTED from the Policy.

Nothing herein contained shall vary, alter or extend any provision or condition of the Policy other than as above stated.

ISSUED TO:   NATIONAL RAILROAD PASSENGER CORPORATION

This Endorsement becomes effective on the First day of December, 2011.

Attached to and forming part of Policy No. US9434 of the Commonwealth Insurance Company.

**COMMONWEALTH INSURANCE COMPANY**

Per   ......................................

**SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION**
**DEBRIS REMOVAL AND COST OF CLEAN UP EXTENSION**
**AUTHORITIES EXCLUSION**
**ASBESTOS MATERIAL REMOVAL LIMITATION**
**ENDORSEMENT**

## SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage and/or pollution and/or contamination, any loss or damage insured under this Policy arising directly from that fire shall (subject to the terms, conditions and limitations of the Policy) be covered.

However, if the insured property is the subject of direct physical loss or damage for which the Company has paid or agreed to pay, then this Policy (subject to its terms, conditions and limitations) insures against direct physical loss or damage to the property insured hereunder caused by resulting seepage and/or pollution and/or contamination.

The Insured shall give notice to the Company of intent to claim NO LATER THAN 12 MONTHS AFTER THE DATE OF THE ORIGINAL PHYSICAL LOSS OR DAMAGE.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten marketability or loss of use to property insured hereunder, vaccines and waste or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency.  Waste includes materials to be recycled, reconditioned and reclaimed.

Limit of Liability
A Sublimit of Liability applies if stated in any Sublimit(s) section of the Policy.

## DEBRIS REMOVAL AND COST OF CLEAN UP EXTENSION

Notwithstanding the provisions of the preceding Exclusion in this Endorsement or any provision respecting seepage and/or pollution and/or contamination, and/or debris removal and/or clean up in the Policy to which this Endorsement is attached, in the event of direct physical loss or damage to the property insured hereunder, this Policy (subject otherwise to its terms, conditions and limitations, including but not limited to any applicable deductible), insures within the sum insured:

(a)     Expenses incurred in removal of debris of the property insured hereunder destroyed or damaged from the premises of the Insured; and/or

(b)     Cost of clean up, at the premises of the Insured, made necessary as a result of such loss or damage.

Provided that this Policy does not insure against the costs of decontamination or removal of water, soil or any other substance on or under such premises.

- 2 -

It is a condition precedent to recovery under this Extension that the Company shall have paid or agreed to pay for physical loss or damage to the property insured hereunder unless such payment is precluded solely by the operation of any deductible and that the Insured shall give notice to the Company of intent to claim for cost of removal of debris or cost of clean up NO LATER THAN 12 MONTHS AFTER THE DATE OF SUCH PHYSICAL LOSS OR DAMAGE.

Limit of Liability
A Sublimit of Liability applies if stated in any Sublimit(s) section of the Policy.

## AUTHORITIES EXCLUSION

Notwithstanding any of the preceding provisions of this Endorsement or any provision of the Policy to which this Endorsement is attached, this Policy does not insure against loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever. Without restricting the generality of the foregoing, the Policy does not cover claims arising out of the following U.S. legislation or amendments thereto:

(a)     Resource Conservation and Recovery Act (R.C.R.A.) commonly known as Solid Waste Disposal Act.

(b)     Comprehensive Environmental Response, Compensation and Liability Act (C.E.R.C.L.A.) commonly known as Superfund.

(c)     Superfund Amendments and Reauthorization Act (S.A.R.A.) commonly known as Superfund Two.

## ASBESTOS MATERIAL REMOVAL LIMITATION

This Policy does not insure loss, damage or expense to remove, or replace asbestos materials unless such materials are themselves damaged by an insured peril.

Notwithstanding that competent Government Authority may declare all or parts of the insured premises unfit for occupancy without removal or modifications to asbestos materials, the Company's liability is limited to the proportion represented by the cost to repair the damaged part of the premises, not the entire property.

Similarly, if the Policy provides any coverage for business interruption, rental value or other loss of use or occupancy, such coverage shall be limited to the time necessary to repair or replace only the damaged portion(s) of the premises.

Nothing in this Endorsement shall override any radioactive contamination exclusion clause in the Policy to which this Endorsement is attached.

Attached to and forming part of Policy No. US9434 of the Commonwealth Insurance Company.

(Rev. Mar. 2008-247)

## ARBITRATION CLAUSE

## ENDORSEMENT

It is expressly agreed that if there is any dispute or disagreement as to the interpretation of the terms and conditions of this policy or the development, adjustment, and/or payment of any claim, they shall be submitted to the decision of a Joint Arbitrator that the Insured and Company shall appoint jointly.

If there is no agreement on the selection of the Joint Arbitrator within a period of 30 (thirty) days after the decision is made, the Insured and the Company shall each appoint their Representative Arbitrators in writing within 10 (ten) days, who shall rule in a joint decision 15 (fifteen) days after they are summoned.

In the event the Representative Arbitrators do not agree, they shall inform the contracting parties in writing of their appointment of a Tie-Breaking arbitrator, who must be accepted before any judicial action is proposed.

The Tie-Breaking Arbitrator shall chair the meetings he considers necessary with the two disagreeing Representative Arbitrators.

The Insured and Company will equally share the costs of the Joint Arbitrator and Tie Breaking Arbitrator, and each party will be responsible for the cost of their own Representative Arbitrator.

<u>Law and Jurisdiction</u>

This Policy shall be interpreted solely according to the law of the State of New York without regard to the choice of law provisions of New York.  Provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this Policy are to be construed in an evenhanded fashion between the Insured and the Company. Without limitation, where the language of this Policy is deemed to be ambiguous or otherwise unclear, policy construction or interpretation will not be presumed to favour any party; no liability or burden will be assigned or assumed by the drafting of this Policy.

The Law and Jurisdiction clause is written in a form bargained for, reviewed, and accepted by the Parties.

(Rev. 11 June 2008) 17049

## SERVICE OF SUIT

## ENDORSEMENT

It is agreed that in the event of the failure of Insurers to pay any amount claimed to be due hereunder, Insurers, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the Policy.

It is further agreed that service of process in such suit may be made upon the Service of Suit nominees;

> Barger & Wolen LLP
> 650 California Street
> Ninth Floor
> San Francisco, CA  94108

The Service of Suit nominees stated above are authorized and directed to accept service of process on behalf of Insurers in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Insurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Nothing in this clause affects or changes the Company's rights to demand and enforce arbitration under any Arbitration Clause Endorsement which may be attached to this Policy.

Attached to and forming part of Policy No. US9434 of the Commonwealth Insurance Company

(Rev. Sept. 2006-237)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM EXCLUSION

**A.**  The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.**  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.**  The following exclusion is added:

CERTIFIED ACTS OF TERRORISM EXCLUSION

Loss or damage caused directly or indirectly by a "certified act of terrorism" is excluded by this policy. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss

**C.**  Application Of Exclusions:

The terms and limitations of any terrorism exclusion, or the non-applicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the war, military action, or nuclear hazard; or any other exclusion.

Nothing herein contained shall vary, alter or extend any provision or condition of the Policy other than as above stated.

Attached to and forming part of Policy No.  US9434 of the Commonwealth Insurance Company.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## CONDITIONS

1.  **TERRITORIAL LIMITS**

    This Policy covers only within the limits of the United States and Canada (excluding transportation to and from Alaska and Hawaii).

2.  **VALUATION**

    This Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

3.  **WAR RISK AND NUCLEAR EXCLUSIONS**

    This Policy does not insure against loss or damage caused by or resulting from:

    (a)  hostile or warlike action in time of peace or war defending against an actual, impending or expected attack:

        (i)  by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

        (ii)  by military, naval or air forces; or

        (iii)  by an agent of any government, power, authority or forces;

    (b)  any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

    (c)  insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government of public authority, or risks of contraband or illegal transportation or trade;

    (d)  nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by the fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy.

4.  **OTHER INSURANCE**

    If at the time of loss or damage there is available to a Named or Unnamed Insured or any other interested party any other insurance which would apply in the absence of this Policy, the insurance under this Policy shall apply only as excess insurance over such other insurance.

5.  **MISREPRESENTATION AND FRAUD**

    This entire Policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this Insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

6.  **MACHINERY**

    In the event of loss of or damage to machinery consisting, when complete for sale or use, of several parts, the Company shall only be liable for the value of the part(s) lost or damaged.

7.  **LABELS**

    In the event of loss of or damage to labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

8.  **PAIR, SET OR PARTS**

    In event of loss of or damage to:

    (a)  any article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

    (b)  any part of property covered consisting, when complete for use, of several parts, the Company shall only be liable for the value of the part lost or damaged.

9.  **NO BENEFIT TO BAILEE**

    This Insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee.

10.  **CLAIMS AGAINST THIRD PARTIES**

    In the event of any loss of or damage to the property covered hereunder the Insured shall immediately make claim in writing against the carrier(s), bailee(s), or others involved.

11.  **NOTICE OF LOSS**

    The Insured shall as soon as practicable report in writing to the Company every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with the Company within Ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn Proof of Loss.

    The Insured warrants and agrees to give prompt notice to the Local Police Authorities in the event of theft of the insured property, provided theft is covered under this Policy.

12.  **PAYMENT OF LOSS**

    All adjusted claims shall be paid or made good to the Insured within Sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

13.  **SUBROGATION**

    If in the event of loss or damage the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company, assign and transfer such claim or right of action to the Company or, at the Company's option, execute and deliver to the Company the customary form or loan receipt upon receiving an advance of funds in respect of the loss or damage; and will subrogate the Company to, or will hold in trust for the Company, all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Company.

14.  **SUE AND LABOR**

    In the event of any loss or damage insured against, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part hereof, without prejudice to this Insurance, nor shall the acts of the Insured or the

Company, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and Company proportionately to the extent of their respective interests. This provision does not increase the amounts or limits of insurance provided by this Policy and deductible provisions shall apply to any expenses so incurred.

15. COMPANY'S OPTIONS

It shall be optional with the Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention to do so within Sixty (60) days after the receipt of the Proof of Loss herein required.

16. IMPAIRMENT OF RECOVERY RIGHTS

Any act or agreement by the Insured before or after loss or damage whereby any right of the Insured to recover in whole or in part for loss or damage to property covered hereunder against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this Policy null and void, but the Insurer's right to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured.

17. ABANDONMENT

There can be no abandonment to the Company of any property.

18. PRIVILEGE TO ADJUST WITH OWNER

In the event of loss of or damage to property of others held by the Insured for which claim is made upon the Company, the right to adjust such loss or damage with the owner or owners of the property is reserved to the Company and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Insured for which such payment has been made. If legal proceedings be taken to enforce a claim against the Insured as respects any such loss or damage, the Company reserves the right at its option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured. No action of the Company in such regard shall increase the liability of the Company under this Policy, nor increase the Limits of Liability specified in the Policy.

19. EXAMINATION UNDER OATH

The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and insofar as is within his or their power cause his or their employees, members of the household and others to submit, to examinations under oath by any person named by the Company and subscribed the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

20. APPRAISAL

If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within Sixty (60) days after receipt of Proof of Loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for Fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

21. SUIT

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be commenced within Twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

22. RECORDS AND INVENTORY

The Insured shall keep accurate books, records and accounts in the following manner:

(a)    a detailed and itemized inventory record of all property covered hereunder shall be maintained and physical inventory shall be taken periodically at intervals not more than twelve months apart;

(b)    a set of books showing a complete record of the business transacted including all purchases and sales for both cash and credit;

(c)    detailed records of:

    (i)    the property of others in his or their custody and control;

    (ii)    all travelers stocks; and

    (iii)    property sent to others for any purpose;

(d)    all such books, records and accounts shall be preserved for not less than one year following the termination of this Policy and any renewal thereof.

23. EXAMINATION OF RECORDS

The Insured shall, as often as may be reasonably required during the term of this Policy and for one year thereafter, produce for examination by the Company or its duly authorized representative all the books and records, inventories and accounts referred to above, relating to the property covered hereunder.

24. AUTOMATIC REINSTATEMENT

Each claim paid hereunder reduces the amount of insurance by the sum paid, but the amount of such loss shall be reinstated automatically. However, if any limit provided herein is cited as being an "Annual Aggregate Limit" for specified perils, this clause shall not be construed to increase that limit beyond the cited amount during any one annual Policy period in respect of loss directly resulting from such specified perils.

25. CANCELLATION

This Policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Insured at the address shown in this Policy or last known address written notice stating when, not less than Five (5) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall

become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.   If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.    The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

26.   CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

27.   CONFORMITY TO STATUTE

Terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

28.   OCCURRENCE DEFINITION

An occurrence shall be defined as any one loss. disaster or casualty or series of losses. disasters or casualties arising out of one event.

29.   CONFLICT OF WORDING

If there is any conflict between these CONDITIONS and the language contained in the Policy forms or endorsements, it is agreed that the latter shall govern.

Cond.pol (557M) Revised May 16, 2007

## COMMONWEALTH

**COMMONWEALTH INSURANCE COMPANY**

(hereinafter called the "Company")

PO Box 49115 Bentall Tower Three, 595 Burrard Street, Suite 1500, Vancouver, BC, Canada V7X 1G4

# RECEIPT FOR CANCELLATION

$_____        _____20_____

In consideration of _____Dollars,

Return Premium, the Receipt of which is hereby acknowledged, this Policy is cancelled and surrendered to the Company.

_____

INSURED

_____

PAYEE

<u>ENDORSEMENT</u>     No. 13

IT IS HEREBY UNDERSTOOD AND AGREED that:-

1. The Commonwealth Seepage and/or Pollution and/or Contamination Exclusion; Debris Removal and Cost of Clean Up Extension; Authorities Exclusion; Asbestos Material Removal Limitation Endorsement is hereby DELETED from the Policy

2. The Commonwealth Arbitration Clause Endorsement is hereby DELETED from the Policy.

3. The Commonwealth Certified Acts of Terrorism Exclusion Endorsement is hereby DELETED from the Policy.

4. The Commonwealth Conditions section of the Policy is hereby DELTED from the Policy.

Nothing herein contained shall vary, alter or extend any provision or condition of the Policy other than as above stated.

ISSUED TO:   NATIONAL RAILROAD PASSENGER CORPORATION

This Endorsement becomes effective on the First day of December, 2011.

Attached to and forming part of Policy No. US9434 of the Commonwealth Insurance Company.

**COMMONWEALTH  INSURANCE  COMPANY**

Per   ...........................................................