UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

NATIONAL RAILROAD PASSENGER   :
CORPORATION,   :
  :
             Plaintiff,   :
  :   Case No.: 21-8575(RA)(JW)
  :
    -against-   :
  :
COMMONWEALTH INSURANCE COMPANY;   :
CERTAIN UNDERWRITERS AT LLOYD'S OF   :  **OPPOSITION TO**
LONDON AND CERTAIN LONDON MARKET   :  **PLAINTIFF'S MOTION FOR**
INSURANCE COMPANIES subscribing to Policy   :  **JUDGMENT ON THE**
Nos. 507/N11NA08242 and GEP 2944; PARTNER   :  **PLEADINGS PURSUANT TO**
REINSURANCE EUROPE plc; STEADFAST   :  **FED. R. CIV. P. 12(c) ON**
INSURANCE COMPANY; TORUS SPECIALTY   :  **DEMOLITION /**
INSURANCE COMPANY; and WESTPORT   :  **CONSTRUCTION COST**
INSURANCE CORPORATION,   :  **COVERAGE**
  :
             Defendants.   :

-------------------------------------------------------------------- x

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 2

      A.    Amtrak's Insurance Program ................................................................. 2

      B.    Amtrak's Claim and Prior Litigation ..................................................... 4

      C.    Amtrak's DICC Claim ............................................................................ 6

      D.    The Final EIS and Record of Decision .................................................. 7

            1.    The New Hudson River Tunnel ................................................... 7

            2.    The Existing Hudson River Tunnel ............................................ 8

      E.    The Pleadings ........................................................................................ 10

III.  LEGAL STANDARD ......................................................................................... 12

IV.   ARGUMENT ....................................................................................................... 13

      A.    Amtrak Fails to Meet the Standard for Entry of Judgment on the Pleadings ...... 13

      B.    The Documents on which Amtrak Relies Establish, at a Minimum,
            Disputed Issues Precluding the Entry of Judgment for Amtrak ........................ 16

      C.    Amtrak Fails to Address All Elements of the DICC Coverage ........................... 18

V.    CONCLUSION .................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................13

*Bailey v. Pataki*,
    No. 08-CV-8563 JSR, 2010 WL 234995 (S.D.N.Y. Jan. 19, 2010)........................................16

*Enel Green Power North America, Inc. v. Geronimo Energy, LLC*,
    No. 18-CV-5882 (AJN), 2019 WL 4805659 (S.D.N.Y. Sept. 30, 2019)................................15

*Gabilly v. City of New York*,
    No. 19-CV-11884 (RA), 2021 WL 3667981 (S.D.N.Y. Aug. 17, 2021)...........................13, 15

*Gioconda L. Grp. PLLC v. Kenzie*,
    941 F.Supp.2d 424 (S.D.N.Y. 2013).......................................................................................15

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)....................................................................................................12

*Johnson v. Rowley*,
    569 F.3d 40 (2d Cir. 2009).......................................................................................................12

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
    570 F.3d 471 (2d Cir. 2001)...............................................................................................12, 13

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) .................................................................................................13, 15

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d. Cir. 2003)....................................................................................................12

*Sheppard v. Beerman*,
    18 F.3d 147 (2d Cir. 1994).......................................................................................................13

*United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave.,
Berkeley, California*,
    No. 13-CV-02027-JST, 2013 WL 6774082 (N.D. Cal. Dec. 23, 2013) ..................................18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................12

Defendants Certain Underwriters at Lloyd's Subscribing to Policy No. 507/N11NA08242 and Policy No. GEP 2944 ("Certain Underwriters at Lloyd's"), Partner Reinsurance Europe PLC n/k/a Partner Reinsurance Europe SE ("Partner Re"), Torus Specialty Insurance Company n/k/a StarStone Specialty Insurance Company ("StarStone"), Westport Insurance Corporation ("Westport"), Commonwealth Insurance Company ("Commonwealth"), and Steadfast Insurance Company ("Steadfast") (collectively, the "Insurers") submit this Opposition to Plaintiff's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) on Demolition / Construction Cost Coverage (the "Motion").

## I.    INTRODUCTION

The present action by Plaintiff National Railroad Passenger Corp. ("Amtrak") concerns a future rehabilitation of the existing Hudson River rail tunnel as the second phase of a future construction of a new rail tunnel under the Hudson River.  Amtrak asks the Court to declare that it is entitled to insurance coverage for certain work that it alleges will be undertaken in the existing Hudson River rail tunnel no earlier than 2030, which Amtrak contends is required as a result of flood damage caused by Hurricane Sandy.  Amtrak seeks this coverage under a Demolition and Increased Cost of Construction provision in the excess insurance policies subscribed by the Insurers for the 2011-2012 policy period despite already having been paid the $125 million sublimit for the peril of flood by the primary insurers participating on the program.  Amtrak originally asserted multiple other grounds for coverage for the Hudson River tunnel in excess of this $125 million flood sublimit, but all of Amtrak's arguments in this regard were rejected by another judge in this District and by the Second Circuit Court of Appeals in prior litigation.

The present motion is brought under Rule 12(c) of the Federal Rules of Civil Procedure. As a result, all factual allegations in the Insurers' answers are accepted as true and all reasonable

inferences therefrom are drawn in their favor.  The Insurers have denied all of the material allegations in the Complaint with respect to the existence of coverage under the Demolition and Increased Cost of Construction provision and raised various additional defenses.  Thus, on the face of the pleadings, there is no coverage under the Demolition and Increased Cost of Construction provision, and thus Amtrak is not entitled to judgment on the pleadings.

Whether Amtrak is entitled to coverage under this provision turns on a number of issues, including but not limited to whether any law, ordinance, governmental directive or standard applies to the work in the Hudson River tunnel contemplated by Amtrak; whether any governmental entity is enforcing such law, ordinance, governmental directive or standard with respect to the tunnel work contemplated by Amtrak; and whether flood damage in 2012 caused by Sandy and covered under the Insurers' excess insurance policies is the cause of such enforcement.  These issues cannot be resolved on a motion for judgment on the pleadings, and Amtrak's motion should be denied.

## II.     STATEMENT OF FACTS[1]

### A.     Amtrak's Insurance Program

For the period from December 1, 2011 to December 1, 2012, Amtrak maintained a first-party property program with total limits of liability of $675 million.  Complaint (ECF Dkt. No. 1) ("Compl.") at ¶¶ 18, 29.  Each of the Insurers subscribed coverage excess of $125 million in Amtrak's 2011-2012 insurance program:

| Insurer | Policy No. | Layer | Participation |
|---|---|---|---|
| Commonwealth | US9434 | $175M xs $125M | 5.7143% |
| Certain Underwriters at Lloyd's | GEP2944 | $175M xs $125M | 2.8571% |

---

[1] In the Motion, Amtrak cites various documents other than its Complaint, including the Policies, pleadings and other filings in the prior litigation between the parties, and the May 28, 2021 Combined Final Environmental Impact Statement / Record of Decision for the Hudson Tunnel Project.  Without conceding that reliance on all of these documents is appropriate on a motion pursuant to Rule 12(c), the Insurers discuss in this Opposition the portions of these documents establishing that there is no basis for the entry of judgment on the pleadings in Amtrak's favor.

| Certain Underwriters at Lloyd's | 507/N11NA08242 | $175M xs $125M | 22.5001% |
| Partner Re[2] | B0507N11NA08246 | $500M xs $125M | 7.5% |
| Steadfast | IM 9805201-00 | $175M xs $125M | 2.8571% |
| StarStone | 41794A111APR | $175M xs $125M | 5.7143% |
| Westport | 31-3-74264 | $500M xs $125M | 14.25% |

Compl. at ¶ 26; Answers at ¶26 (the "Policies").  The Policies insure "all risk of direct physical loss of or damage to property described herein ...."  Compl., Ex. 1 (Commonwealth Policy), ECF Dkt. No. 1-1, at 21 ¶ 9; Ex. 2 (Certain Underwriters at Lloyd's Policy No. GEP2944), ECF Dkt. No. 1-2 at 22 ¶ 9; Ex. 3 (Certain Underwriters at Lloyd's Policy No. 507/N11NA08242, ECF Dkt. No. 1-3 at 3;[3] Ex. 5 (Partner Re Policy), ECF Dkt No. 1-5 at 21 ¶ 9; Ex. 6 (Steadfast Policy), ECF Dkt. No. 1-6 at 21 ¶ 9; Ex. 7 (StarStone Policy), ECF Dkt. No. 1-7 at 21 ¶ 9; Ex. 8 (Westport Policy), ECF Dkt. No. 1-8 at 25 ¶ 9.[4]  The Policies do not cover "ordinary wear and tear, or gradual deterioration."  Commonwealth Answer at Seventh Affirmative Defense; Certain Underwriters at Lloyd's Answer at Sixth Affirmative Defense; Partner Re Answer at Sixth Affirmative Defense; Steadfast Answer at Seventh Affirmative Defense; StarStone Answer at Sixth Affirmative Defense; Westport Answer at Fifth Affirmative Defense.  Amtrak's property insurance program included a $125 million sublimit for flood.  Commonwealth Answer at Second Affirmative Defense; Certain Underwriters at Lloyd's Answer at Second Affirmative Defense; Partner Re Answer at Fourth Affirmative Defense; Steadfast Answer at Second Affirmative Defense;

---

[2] Partner Re did not insure Amtrak.  Rather, it subscribed a policy of facultative reinsurance reinsuring Passenger Railroad Insurance Ltd.  *See* Partner Re Answer at ¶ 4.

[3] Amtrak attaches to its Complaint what it alleges to be a true and correct copy of Policy No. 507/N11NA08242 subscribed by Certain Underwriters at Lloyd's.  Compl. at ¶ 21 and Ex. 3.  Underwriters deny that Exhibit 3 to the Complaint constitutes a true and correct copy of this policy.  Answer of Certain Underwriters at Lloyd's at ¶ 21.

[4] Copies of what Amtrak contends constitutes the Policies are attached as Exhibits 1 to 8 to Amtrak's Complaint.  Hereafter, reference to "Commonwealth Policy" will be to ECF Dkt. No. 1-1; Reference to "Certain Underwriters at Lloyd's Policy No. GEP2944" will be to ECF Dkt. No. 1-2, "Certain Underwriters at Lloyd's Policy No. 507/N11NA08242" will be to ECF Dkt. No. 1-3; "Partner Re Policy" will be to ECF Dkt. No. 1-5, "Steadfast Policy" will be to ECF Dkt. No. 1-6; "Starstone Policy" will be to ECF Dkt. No. 1-7, and "Westport Policy" will be to ECF Dkt. No. 1-8.  Citations to page numbers in the Policies refer to the page number of the PDF exhibit.

StarStone Answer at Second Affirmative Defense; and Westport Answer at Second Affirmative

Defense. Certain of the Policies expressly exclude flood.  Certain Underwriters at Lloyd's Answer

at Second Affirmative Defense; Partner Re Answer at Fourth Affirmative Defense.

The Policies include a coverage extension for Demolition and Increased Cost of

Construction ("DICC"),[5] which provides:

> In the event of loss or damage under this policy that causes the enforcement of any
> law, ordinance, governmental directive or standard regulating the construction,
> repair, use, or occupancy of property, this Company shall be liable for:
>
> (1)   the cost of demolishing the undamaged property including the cost of clearing
> the site;
>
> (2)   the proportion that the value of the undamaged part of the property bore to
> the value of the entire property prior to loss;
>
> (3)   increased costs of repair or reconstruction of the damaged and undamaged
> property on the same or another site, limited to the cost that would have been
> incurred in order to comply with the minimum requirements of such law or
> ordinance regulating the repair or reconstruction of the damaged property on
> the same site.  However, this Company shall not be liable for any increased
> cost of construction loss unless the damaged property is actually rebuilt or
> replaced;
>
> (4)   any increase in the Time Element loss arising out of the additional time
> required to comply with said law or ordinance.

Commonwealth Policy at 19; Certain Underwriters at Lloyd's Policy No. GEP2944 at 20; Certain

Underwriters at Lloyd's Policy No. 507/N11NA08242 at 3; Partner Re Policy at 18; Steadfast

Policy at 18; StarStone Policy at 19; Westport Policy at 22-23.

### B.     Amtrak's Claim and Prior Litigation

Amtrak owns and operates the Hudson River Tunnel.  Compl. at ¶ 2.  During the storm

commonly referred to as Sandy, a portion of the Hudson River Tunnel flooded, causing damage to

---

[5] Amtrak incorrectly refers to the Policies' Demolition and Increased Cost of Construction provision as
"Demolition/Construction Cost Coverage."

property in the tunnel.  Compl. at ¶¶ 41, 44; Answers at ¶¶ 41, 44.  Amtrak made a claim under its property insurance program, including those policies excess of $125 million subscribed by the Insurers.  Compl. at ¶ 50; Answers at ¶ 50. Amtrak filed suit against all of the insurers in its property insurance program on September 17, 2014, *Amtrak v. Arch Specialty Ins. Co.,* No. 14-cv-7510 (S.D.N.Y.) (the "First Coverage Action").  Compl. at ¶ 55; Answers at ¶ 55.  Notwithstanding the fact that the Policies sit excess of the flood sublimit, Amtrak named the Insurers as defendants in the First Coverage Action.  Amtrak claimed that the Insurers owed coverage because salts from the floodwaters caused a "chemical attack" on property in the tunnel, which constituted "ensuing loss" under the Polices that was not subject to the flood sublimit.   *See* First Coverage Action, Amended Compl., ECF Dkt. No. 65 at ¶¶ 102-122, No. 14-cv-7510 (S.D.N.Y. Dec. 5, 2014). Amtrak also claimed that the Insurers owed coverage because the undamaged portions of the bench walls must be replaced to comply with the fire-life safety standards under National Fire Protection Association (NFPA) 130, triggering coverage under the DICC provision in the Policies.  *See Amtrak v. Arch Specialty Ins. Co.,* 124 F.Supp.3d 264,269 (S.D.N.Y. Aug. 3, 2015).

The District Court rejected all of Amtrak's claims against the Insurers.  *See id.*  It held that Amtrak's loss was caused by flood and rejected Amtrak's ensuing loss argument because all of the damage in the tunnel was caused by flood: "the damage from the flood did not give rise to a different type of peril; rather, one aspect of the flood of brackish seawater – the inundation of salt – was left behind and it caused damage." *Id*. at 274-75.  The District Court held that Amtrak failed to raise a genuine issue of material fact regarding whether the alleged loss or damage had caused, is causing, or will cause the enforcement of any law, ordinance, governmental directive or standard requiring replacement of undamaged property.  *Id*. at 278-79.  As a result, the District Court held that there was no coverage under the DICC provision in the Policies.  *Id*.

On appeal, the Second Circuit affirmed that the Insurers owed no coverage to Amtrak. *See Amtrak v. Aspen Specialty Ins. Co.,* 661 Fed.App'x. 10 (2d. Cir. 2016). As to Amtrak's claim under the Policies' DICC provision, the Second Circuit held that the District Court's ruling "was correct that Amtrak is not entitled to coverage *as of now.*" *Id*. at 15 n.4 (emphasis in original). The Second Circuit vacated the District Court's opinion only insofar as it granted summary judgment with prejudice and prevented Amtrak from seeking DICC coverage in the future. *See id*. The Second Circuit made clear it was not addressing in any way the merits of any future DICC claim by Amtrak: "In so holding, we express no view about whether Amtrak's future claim for coverage under the DICC clause will be successful." *Id.* at n.4.

Following remand, Amtrak requested that it be permitted to proceed with its claim under the DICC provision. The District Court declined Amtrak's request, dismissing the action without prejudice. *See* First Coverage Action, Memorandum Order re Dismissal of Amtrak's Remaining Claims Without Prejudice, ECF Dkt. No. 359, No. 14-cv-7510 (S.D.N.Y. Sept. 26, 2018). In its dismissal Order, the District Court did not address the merits of Amtrak's DICC claim. *See generally id*.

C.   **Amtrak's DICC Claim**

Amtrak and other project partners are planning to construct a new rail tunnel under the Hudson River. Once this project is completed, the existing Hudson River Tunnel reportedly will be rehabilitated. This work is referred to as the Hudson Tunnel Project. Final Environmental Impact Statement at § S-1. On October 19, 2021, Amtrak filed the present action. Amtrak alleges that it is entitled to coverage under the DICC provision in the Policies because the Final Environmental Impact Statement issued in connection with the Hudson Tunnel Project provides for the replacement of the bench walls, track and trackbed in the existing Hudson River Tunnel.

-6-

Compl. at ¶¶ 58-59.  Amtrak asserts causes of action for declaratory judgment and breach of contract.

### D.      The Final EIS and Record of Decision

A Combined Final Environmental Impact Statement (the "Final EIS") / Record of Decision (the "ROD") for the Hudson Tunnel Project was issued on May 28, 2021.  This project consists of the construction of a new rail tunnel under the Hudson River and rehabilitation of the existing tunnel under the Hudson River.  ROD at § 1.  The purpose of the Hudson Tunnel Project is to "preserve the current functionality" of rail service between New York and New Jersey and the Northeast Corridor generally and to provide "redundant capability."  ROD at § 2.  The Final EIS was prepared by the Federal Railroad Administration, the New Jersey Transit Corporation, and the Port Authority of New York and New Jersey, in coordination with Amtrak.  Final EIS at § 26.1.  Amtrak is responsible for developing the preliminary design of the Hudson Tunnel Project.  Final EIS at § 1.1.1.

### 1.      The New Hudson River Tunnel

The ROD identifies the construction of a new Hudson River Tunnel as the "Preferred Alternative."  ROD at § 3.4.2.  The new Hudson River Tunnel would consist of two separate tubes, each containing one track.  *Id*.  The ROD states that the new Hudson River Tunnel "would comply with the fire-life safety standards established by the National Fire Protection Association (NFPA), and particularly NFPA 130, *Standard for Fixed Guideway Transit and Passenger Rail Systems.*" *Id.* § 3.4.2.1.  The ROD further states that each tube of the tunnel would have two bench walls that would house utility conduits:

> The bench wall on the inner tunnel wall would have a height of 4 feet above the top of rail, and would serve as a walkway for evacuation of passengers from a train in an emergency. The bench wall on the outer wall of the tunnel would be at the height of the top of rail.

*Id.* The track in the new Hudson River Tunnel "would be continuous welded rail with a direct fixation rail system." *Id*. Traction power would be provided via an overhead contact system; the new tunnel would also have third-rail power that could be used to rescue a stranded train. ROD at § 3.4.2.1.

### 2. The Existing Hudson River Tunnel

Amtrak is the owner and operator of the Northeast Corridor, including the existing Hudson River Tunnel. Final EIS at § 1.1.1. It was "constructed between 1904 and 1908 and opened for service in 1910, is more than 100 years old and was designed and built to early 20th-century standards." Final EIS at § 1.4. The Final EIS reviews Amtrak's proposed rehabilitation of the existing Hudson River Tunnel. Amtrak is the lead for the design of the tunnel rehabilitation. Final EIS at § 2.3.3.2.

The preparers of the Final EIS determined that the existing Hudson Tunnel was safe. *See* Final EIS at Executive Summary S-3 ("the tunnel is safe for use"); §§ 1.1.3 ("The North River Tunnel is currently safe for use"); 2.5.6.1.2 ("the tunnel is structurally sound and safe"). The preparers of the Final EIS also determined that the existing Hudson Tunnel had been restored to service after Sandy waters came in contact with a portion of the tunnel. *See* Final EIS, §§1.4.1 and 2.5.6. Since Sandy, Amtrak has been undertaking ongoing repairs to the tunnel and in 2020, Amtrak began the "North River Tunnel Interim Reliability Improvements Program" to accelerate immediate maintenance and repair in the tunnel prior to its full rehabilitation. *See* Final EIS §2.2.1. Through this program, Amtrak's goal is improving safety and reliability for the public over the next decade in advance of the comprehensive rehabilitation. *See* Final EIS §1.4.1.

According to the ROD, the rehabilitation of the existing Hudson River Tunnel would include the replacement of the bench walls to: "1) ensure that the North River Tunnel can meet

modern safety standards for emergency egress and for access for maintenance and first responders; 2) provide protection for high-voltage feeder cables and signal and communication cables; and 3) provide for long-term integrity of the rail system." ROD at § 3.4.2.3. Just as with the new tunnel construction, the Final EIS states that these bench walls "should be constructed at the proper height to meet current fire-life safety standards (National Fire Protection Association (NFPA) 130)." The Final EIS further states that "[t]his replacement should occur portal to portal, since it is not practical to construct the middle portion of a bench wall at different height than the two ends, given that the bench wall operates as one continuous system providing emergency egress and housing duct work inside." Final EIS at § 1.4.1.

The Final EIS also provides for the replacement of the rail and ballasted trackbed due to damage from Sandy and performance and reliability issues:

> In addition, the North River Tunnel's ballasted trackbed is coated with chlorides remaining from the seawater that flooded the tunnel. The existing rail system in the North River Tunnel consists of rock ballast, treated timber ties, running rail and third rail. Full removal of the chlorides from the ballast, including from the inaccessible surfaces, is not physically possible; therefore, the ballast needs to be entirely removed. This requires removal of the tie and rail systems as well, in order to remove the ballast. Moreover, the ballasted track is a leading cause of train delays and a major contributor to the lack of reliability. The heavy train traffic in the tunnel causes the ballast to degrade at an accelerated pace. As the ballast degrades, this creates fine dust and debris that lead to clogs and water retention as well as pump damage. Water retention results in wet ballast, which short circuits the track, creating false signals that lead to one of the major causes of train delays in the North River Tunnel. Degradation of the ballasted track components (perishable wood ties and ballast) can also affect the geometry of the track, which leads to poor ride quality, more wheel and rail wear and increased impact on the truck assemblies. Most major tunnel rail systems worldwide now use either a type of direct fixation track or concrete-embedded traditional ties, rather than ballasted track. The North River Tunnel needs replacement of the ballasted trackbed with a new direct fixation track system and track drainage system to address these issues.

Final EIS at § 1.4.1.

The proposed rehabilitation of the existing Hudson River Tunnel would not begin until the completion of the new tunnel, which based on "preliminary engineering," is expected in 2030.[6] The work in the existing Hudson River Tunnel would take place from 2030 to 2033.  Final EIS at § 2.5.9.

### E.    The Pleadings

By this motion, Amtrak seeks judgment on the pleadings with respect to coverage under the DICC provision in the Policies.  The relevant allegations in Amtrak's Complaint as to its DICC claim, and the Insurers' Answers to those allegations, are as follows:

| Amtrak Complaint: | Insurers' Answers: |
| --- | --- |
| 5. Amtrak seeks a declaration of its rights and the Insurance Company Defendants' obligations under the Property Insurance Policies' coverage extension for Demolition and Increased Cost of Construction ("DICC Extension") clauses to pay for Amtrak's costs to be incurred demolishing and replacing Hudson Tunnel elements portal-to-portal as a result of damage caused by Superstorm Sandy…. | 5. [The Insurers] admit that Amtrak seeks a declaration of its rights under the insurance policies referenced in Paragraph 4 of the Complaint and other recoveries through the instant action and deny that Amtrak is entitled to the declaration or other relief it seeks. [The Insurers] deny the remaining allegations of Paragraph 5 of the Complaint. |
| 33. The costs required under the Final EIS to perform the necessary demolition and construction of the Hudson Tunnel benchwalls, trackbed, and other components, resulting from the damage caused by Superstorm Sandy, as discussed in greater detail below, are ensuing losses or damages not otherwise excluded. | 33. [The Insurers] deny the allegations in Paragraph 33 of the Complaint. |
| 49.  Due to the nature of the damage, the age of the Hudson Tunnel, and modern standards, repairs to the Hudson Tunnel will require full replacement of both damaged and undamaged portions of the bench walls and ballasted trackbed and other components. | 49. [The Insurers] admit that the age of the Hudson Tunnel and its components may require some work to be performed in the Hudson Tunnel, including the bench walls and trackbed. Underwriters deny the |

---

[6] The estimated construction cost to rehabilitate the North River Tunnel is based on conceptual engineering.  Final EIS at § S.3.3.3.

| | remaining allegations in Paragraph 49 of the Complaint. |
|---|---|
| 54. Amtrak's DICC Extension losses will vastly exceed $125,000,000 in connection with portal-to-portal replacement of tunnel elements due to damage caused by Superstorm Sandy. | 54. [The Insurers] deny the allegations in Paragraph 54 of the Complaint. |
| 64.  The Final EIS is a "law, ordinance, governmental directive or standard regulating the construction, repair, use or occupancy" of the Hudson Tunnel, and the costs to perform the necessary demolition and construction specified in the Final EIS are covered by the DICC Extension in the Property Insurance Policies. | 64. Paragraph 64 of the Complaint states legal conclusions to which no response is required. To the extent that a response is deemed necessary, [the Insurers] deny these allegations in Paragraph 64 of the Complaint. [The Insurers] deny the remaining allegations in Paragraph 64 of the Complaint. |
| 66. As a result, Amtrak is entitled to recover $125,000,000 in DICC Extension coverage without limitation. | 66. [The Insurers] deny the allegations in Paragraph 66 of the Complaint. |
| 73. Amtrak seeks a judicial declaration by the Court that Amtrak is entitled to coverage under the DICC Extension in the Insurance Company Defendants' excess Property Insurance Policies for the activities specified in the Final EIS … and resolving any other disputes over policy terms and provisions that arise in the course of this Action. | 73. [The Insurers] admit that Amtrak seeks the relief set forth in Paragraph 73 of the Complaint and deny that Amtrak is entitled to such relief. |

Compl. at ¶¶ 5, 33, 49, 54, 64, 66, 73; Answers at ¶¶ 5, 33, 49, 54, 64, 66, 73.

In addition, the Insurers have raised the following defenses in their Answers to Amtrak's

Complaint:

> Amtrak has failed to establish that any proposed work in the Hudson Tunnel for which it seeks coverage in this action relates to damage during the policy period as opposed to repair of pre-existing conditions and/or improvements and betterments.

Commonwealth Answer at Eighth Affirmative Defense; Certain Underwriters at Lloyd's Answer

at Seventh Affirmative Defense; Partner Re Answer at Seventh Affirmative Defense; Steadfast

Answer at Eighth Affirmative Defense; StarStone Answer at Seventh Affirmative Defense; and

Westport Answer at Sixth Affirmative Defense.

> The DICC provision in [the Policy]provides that [the Insurers] "shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced." Amtrak has not rebuilt or repaired any portion of the Hudson Tunnel and thus the claims asserted by Amtrak in the Complaint are not ripe.

Commonwealth Answer at Third Affirmative Defense; Certain Underwriters at Lloyd's Answer

at Fourth Affirmative Defense; Partner Re Answer at Fifth Affirmative Defense; Steadfast Answer

at Third Affirmative Defense; StarStone Answer at Fourth Affirmative Defense; and Westport

Answer at Third Affirmative Defense.

> [The Policy] excludes coverage for flood. As a result, there is no loss or damage covered by this policy on which Amtrak may base a claim, including but not limited to the claim under the Demolition and Increased Cost of Construction ("DICC") provision in [the Policy] asserted by Amtrak in this action.

Certain Underwriters at Lloyd's Answer at Third Affirmative Defense; Partner Re Answer at

Fourth Affirmative Defense.

## III.    LEGAL STANDARD

In evaluating a motion for judgment on the pleadings made under Fed. R. Civ. P. 12(c), the

Court applies the same standard applicable to a motion for dismissal pursuant to Fed. R. Civ. P.

12(b)(6).  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010), citing *Johnson v. Rowley*,

569 F.3d 40, 43 (2d Cir. 2009) (per curium).  The Court "must accept all allegations in the

complaint as true and draw all inferences in the non-moving party's favor.  *LaFaro v. New York

Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2001), quoting *Miller v. Wolpoff &

Abramson, L.L.P.*, 321 F.3d 292, 300 (2d. Cir. 2003).  Thus, when a plaintiff is the moving party,

the Court "must accept all factual allegations in the answer and draw all reasonable inferences in

favor of the defendants." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

If there are disputed questions of fact, it is improper for the Court to grant a motion for judgment on the pleadings. *See Lively* at 6 F.4th 301-302, citing *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994). Furthermore, the Court is "not bound to accept as true legal conclusions couched as factual allegations." *LaFaro* at 570 F.3d 475-476, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, when a defendant's answer denies the allegations bearing on the plaintiff's claims, the Court "is obligated to accept the veracity of Defendants' denials and draw all reasonable inferences in their favor." *Gabilly v. City of New York*, No. 19-CV-11884 (RA), 2021 WL 3667981 at *3 (S.D.N.Y. Aug. 17, 2021), citing *Lively* at 6 F.4th 301.

## IV.   ARGUMENT

Amtrak fails to meet the high bar set for entry of judgment on the pleadings. On a motion under Rule 12(c), "a court may consider undisputed allegations of fact …, but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Lively*, 6 F.4th at 302. Amtrak's claim for coverage under the DICC provision in the Policies implicates questions of causation and other factual issues that are disputed and preclude the entry of judgment on the pleadings under Rule 12(c).

### A.   Amtrak Fails to Meet the Standard for Entry of Judgment on the Pleadings

Rule 12(c) motions address the legal sufficiency of the claim. To prevail on its Rule 12(c) motion, Amtrak must establish *on the face of the pleadings* that there are no material issues of fact to be resolved and that it is entitled to judgment as a matter of law. Amtrak cannot meet this standard with respect to its claim for coverage under the DICC provision in the Policies. In its motion, Amtrak claims that coverage under the DICC provision exists where there is covered loss

-13-

or damage under the Policies that causes the enforcement of a law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property.  Amtrak Mem. at 12.  On the face of the pleadings, each of these elements is disputed.

As set forth above, the Insurers have denied the allegations in the Complaint relating to Amtrak's DICC coverage claim.  *See supra* at 10-11.  First, Amtrak alleges that the Final EIS is a law, ordinance, governmental directive or standard.  Compl. at ¶64.  The Insurers deny this allegation. Answers at ¶64.  Second, Amtrak alleges that the Final EIS regulates the construction, repair, use, or occupancy of property.  Compl. at ¶64.  The Insurers deny this allegation.  Answers at ¶64.   Third, Amtrak alleges that loss or damage covered under the Policies caused the enforcement of a governmental directive.  *See* Compl. at ¶¶ 62-66.  The Insurers again deny this allegation.  *See* Answers at ¶¶ 62-66.

In addition to these denials, the Insurers raise as a defense that "Amtrak has failed to establish that any proposed work in the Hudson Tunnel for which it seeks coverage in this action relates to damage during the policy period as opposed to repair of pre-existing conditions and/or improvements and betterments."  *See supra* at 11.  The Insurers also raise as a defense that they are not liable under the DICC provision "unless the damaged property is actually rebuilt or replaced" and, because "Amtrak has not rebuilt or repaired any portion of the Hudson Tunnel…the claims asserted by Amtrak in the Complaint are not ripe."  *See supra* at 12.  Certain Insurers also raise as an affirmative defense that their policies exclude coverage for flood.  *See supra* at 12.  The Insurers further contend that Amtrak has failed "to properly mitigate, restore, and/or repair its losses."  Commonwealth Answer at Ninth Affirmative Defense; Certain Underwriters at Lloyd's Answer at Eighth Affirmative Defense; Partner Re Answer at Eighth Affirmative Defense; Steadfast Answer at Ninth Affirmative Defense; StarStone Answer at Eighth Affirmative Defense;

-14-

and Westport Answer at Seventh Affirmative Defense.  On a Rule 12(c) motion, all of these denials

and defenses, and all reasonable inferences to be drawn from them, must be accepted as true.  As

a result, none of the requirements for DICC coverage are met, and there is no basis on which

judgment may be entered in Amtrak's favor.

As the Second Circuit has held, "[w]hen a plaintiff is the movant, courts must accept all

factual allegations in the answer and draw all reasonable inferences in favor of the defendants,

who are the non-movants in that scenario."  *Lively*, 6 F.4th at 305.  Applying this standard,

decisions by courts in this District make clear that there is no basis for the entry of judgment on

the face of the pleadings in the present action.  For example, in *Gabilly v. City of New York*, this

Court addressed a Rule 12(c) motion in the context of a § 1983 claim for excessive force against

two New York City police officers.  2021 WL 3667981 at *1.  The answers filed by defendants in

this case largely denied the allegations made by the plaintiff in support of the excessive force

claim, which this Court determined was sufficient to deny plaintiff's Rule 12(c) motion:

> Plaintiff nonetheless insists that he should win now, because he "has put forth
> allegations supported by fact and exhibits, while Defendants have stated mere
> denials or claims of an inability to put forth a confirmation or denial." "Mere
> denials," however, are all that is required of Defendants at this stage of the
> litigation…. At this stage, … the Court is obligated to accept the veracity of
> Defendants' denials and draw all reasonable in their favor.  Having done so, the
> Court denies Plaintiff's motion in its entirety.

*Id*. at *3 (internal citations omitted).  *See also*, *Enel Green Power North America, Inc. v. Geronimo*

*Energy, LLC*, No. 18-CV-5882 (AJN), 2019 WL 4805659 at *7 (S.D.N.Y. Sept. 30, 2019)

(Plaintiff's motion for judgment on pleadings denied where material facts are in dispute and the

Court must assume that the denials and allegations in defendant's answer are true); *Gioconda L.*

*Grp. PLLC v. Kenzie*, 941 F.Supp.2d 424, 436 (S.D.N.Y. 2013) (plaintiff's Rule 12(c) motion

regarding the violation of cybersquatting statute denied: "[t]he absence of any admitted facts in

the pleadings regarding five of the nine indicia strongly augurs at this preliminary stage against a finding of bad faith intent to profit"); *Bailey v. Pataki*, No. 08-CV-8563 JSR, 2010 WL 234995 at *1 (S.D.N.Y. Jan. 19, 2010) (denying plaintiff's Rule 12(c) motion where various of plaintiff's allegations, including existence of agreement necessary to conspiracy claim, were denied and defendants' raised qualified immunity defense).

On the basis of the pleadings in this action, the issues presented are clear and the fact that the parties dispute those issues is equally clear. Among other issues, the parties dispute: (1) whether the Final EIS / ROD constitutes a law, ordinance, governmental directive or standard; (2) whether the Final EIS regulates the construction, repair, use, or occupancy of property; and (3) whether any loss or damage covered under the Policies caused the Final EIS / ROD, much less the enforcement of a governmental directive. On the face of the pleadings, which is the only relevant inquiry on a Rule 12(c) motion, these issues are disputed and Amtrak's Motion must be denied.

**B.    The Documents on which Amtrak Relies Establish, at a Minimum, Disputed Issues Precluding the Entry of Judgment for Amtrak**

The denials and defenses in the Insurers' Answers are sufficient to defeat the Motion. Thus, it is not necessary to reach the documents on which Amtrak in its Motion. Nevertheless, these documents do not support Amtrak's claim for coverage under the DICC provision for the replacement of the bench walls, track or track bed in the existing Hudson River Tunnel.

As to the bench walls, the Hudson River Tunnel is well over 100 years old. *See supra* at II.D.2. Notwithstanding its age, the tunnel is structurally sound and safe for use. *Id.* Amtrak prepared the design for both the new Hudson River Tunnel and the rehabilitation of the existing Hudson River Tunnel. Amtrak's design, referred to as the Preferred Alternative, was the only design presented to the FRA. The only other alternative presented to the FRA was a no-action alternative. Final EIS at § 2.1. Thus, the FRA is not dictating this work in the existing tunnel.

Rather, it is an upgrade that Amtrak has chosen to include in its design.  Indeed, the comment in the Final EIS regarding the requirement that the benchwalls be replaced portal to portal is presented as one of "practicality."  Final EIS at § 1.4.1.  There is no suggestion that this requirement that the benchwalls be replaced portal to portal would be necessary under the minimum requirements of any applicable law or ordinance.  Moreover, the proposed Amtrak designs for both the new and existing tunnels provide that the top of the bench walls in the tunnels sit at a height level with the trains.  *See* Final EIS § 2.3.3.2.1 ("New bench walls (or other form of walkway) are needed at a lower height that is level with the floor of the Amtrak and NJ TRANSIT trains that operate in the tunnel.").  Thus, it is clear that the work for which coverage is sought has nothing to do with Sandy or its impact on the existing tunnel.  Further, the ROD states that Amtrak's design of the benchwalls "provide protection for high-voltage feeder cables and signal and communication cables" and "provide for long-term integrity of the rail system."  ROD at § 3.4.2.3.

As to the track and ballasted trackbed, the Final EIS makes clear that the decision to replace these components was performance-related, and not caused by any damage resulting from Sandy or mandated by any governmental directive regulating the construction or repair of property in the tunnel.  The Final EIS states that the "the ballasted track is a leading cause of train delays and a major contributor to the lack of reliability."  Final EIS at § 1.4.1.  Dust and debris from aging ballast leads to clogs and water retention, which in turn results in wet ballast that short circuits the track and creates false signals that lead to one of the major causes of train delays in the tunnel.  *Id*. As expressly stated in the Final EIS, the "North River Tunnel rehabilitation includes full replacement of its antiquated ballasted trackbed with a modern direct fixation track system to address ongoing damage issues created by the ballast."  See Final EIS, §2.3.3.2.1.   As such, Amtrak is undertaking this work to address these performance-related issues, not any impact from

Sandy.  In short, Amtrak wants state-of-the-art tunnels, and its design calls for direct fixation track because they are state-of-the-art.

### C.    Amtrak Fails to Address All Elements of the DICC Coverage

In addition to the bases for denial of the Motion set forth above, Amtrak ignores several other requirements for coverage under the DICC provision.  First, any coverage under the DICC provision for reconstruction of the undamaged portions of the property is "limited to the cost that would have been incurred in order to comply with the <u>minimum requirements</u> of such law or ordinance regulating the repair or reconstruction of the damaged property."  *See supra* at 4 (emphasis added).  Second, the DICC provision states that the Insurers "shall not be liable for any increased cost of construction loss <u>unless the damaged property is actually rebuilt or replaced</u>." *Id*. (emphasis added).  Resolution of this issue is particularly premature given that the proposed work that Amtrak claims is covered under the DICC provision would not occur until 2030 to 2033, even assuming that the project proceeds in accordance with the currently proposed plans. Amtrak's Complaint contains no allegations whatsoever regarding these requirements.[7]

## V.    CONCLUSION

For the foregoing reasons, the Insurers respectfully request that the Court deny Plaintiff's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) on Demolition / Construction Cost Coverage.

---

[7] Although not necessary to its denial, Amtrak's Motion would not resolve any one cause of action in the Complaint in its entirety, and thus is an improper use of Rule 12(c).  *See, e.g.*, *United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, California*, No. 13-CV-02027-JST, 2013 WL 6774082, at *1 (N.D. Cal. Dec. 23, 2013) ("the Court is aware of no case in which a court has granted partial judgment on the pleadings with respect to less than a full cause of action").

Dated:  New York, New York
         June 15, 2022

**ROBINSON & COLE LLP**

By:    */s/ Brian Y. Kim*
       Brian Y. Kim
       666 Third Avenue, 20th Floor
       New York, New York 10017
       Telephone: (212) 451-2900
       Email: bkim@rc.com

       Matthew M. Burke (admitted pro hac vice)
       Robinson & Cole LLP
       One Boston Place, 25th Floor
       Boston, Massachusetts 02108
       Telephone: (617) 557-5996
       Email: mburke@rc.com

       *Attorneys for Defendants Certain Underwriters at*
       *Lloyd's Subscribing to Policy No. 507/N11NA08242*
       *and Policy No. GEP 2944, Partner Reinsurance*
       *Europe PLC n/k/a Partner Reinsurance Europe SE,*
       *Torus Specialty Insurance Company n/k/a StarStone*
       *Specialty Insurance Company, and Westport*
       *Insurance Corporation*

**MOUND COTTON WOLLAN &
GREENGRASS LLP**

       */s/ Costantino P. Suriano*
       Costantino P. Suriano
       Bruce R. Kaliner
       Deanna M. Manzo
       One New York Plaza
       New York, New York, 10004
       Telephone: (212) 804-4200
       Email: csuriano@moundcotton.com
       Email: bkaliner@moundcotton.com
       Email: dmanzo@moundcotton.com

       *Attorneys for Defendants Steadfast Insurance*
       *Company and Commonwealth Insurance*
       *Company*

-19-